UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE BEACON ASSOCIATES LITIGATION | No. 09 Civ. 0777 (LBS) |
| IN RE J.P. JEANNERET ASSOCIATES, INC. | No. 09 Civ. 3907 (CM) |
| HILDA L. SOLIS, Secretary of the United States Department of Labor, <br><br> Plaintiff, <br><br> v. <br><br> BEACON ASSOCIATES MANAGEMENT CORP. et. al., <br> Defendants. | No. 10 Civ. 8000 (LBS) (AJP) |
| BOARD OF TRUSTEES OF THE BUFFALO LABORERS SECURITY FUND, et. al., <br> Plaintiffs, <br> v. <br><br> J.P. JEANNERET ASSOCIATES, INC., et. al., <br> Defendants. | No. 09 Civ. 8362 (LBS) (AJP) |
| BEACON ASSOCIATES MANAGEMENT CORP. <br> Plaintiff, <br> v. <br><br> BEACON ASSOCIATES LLC I, <br> Defendant. | No. 09 Civ. 6910 (AJP) |
| ERNEST A. HARTMAN et. al., <br> Plaintiffs, <br> v. <br><br> IVY ASSET MANAGEMENT L.L.C. et. al., <br> Defendants. | No. 09 Civ. 8278 (LBS) (AJP) |
| STEPHEN C. SCHOTT, as TRUSTEE FOR THE STEPHEN C. SCHOTT 1984 TRUST, <br> Plaintiff, <br> v. <br><br> IVY ASSET MANAGEMENT CORP., et. al., <br> Defendants. | No. 10 Civ. 8077 (LBS) |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| THE PEOPLE OF THE STATE OF NEW YORK<br>By ANDREW M. CUOMO, Attorney General of the<br>State of New York,<br><br><br><br>Plaintiff,<br><br><br>- against -<br><br><br>IVY ASSET MANAGEMENT LLC, LAWRENCE<br>SIMON, and HOWARD WOHL,<br><br><br>Defendants. | Index No. 450489/2010 |
| DONNA M. McBRIDE, individually and derivatively<br>on behalf of Beacon Associates LLC II,<br>Plaintiff,<br>v.<br><br><br>KPMG INTERNATIONAL et. al.,<br>Defendants,<br>-and-<br><br>BEACON ASSOCIATES LLC II,<br>Nominal Defendant. | Index No. 650632/2009E |
| ALISON ALTMAN, et. al.,<br>Plaintiffs,<br>v.<br><br><br>BEACON ASSOCIATES MANAGEMENT<br>CORPORATION, et. al.,<br>Defendants. | Index No. 652238/2010 |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

| | |
|---|---|
| JOEL SACHER and SUSAN SACHER, derivatively on behalf of BEACON ASSOCIATES LLC II, <br>                      Plaintiffs, <br>              v. <br><br> BEACON ASSOCIATES MANAGEMENT CORP. et. al., <br>                   Defendants, <br>              -and- <br><br> BEACON ASSOCIATES LLC II, <br>                   Nominal Defendant. | Index No. 005424/2009 |
| CHARLES J. HECHT, derivatively on behalf of ANDOVER ASSOCIATES LLC I, <br>                   Plaintiff, <br>              v. <br><br> ANDOVER ASSOCIATES MANAGEMENT CORP. et. al., <br>                   Defendants, <br>              -and- <br><br> ANDOVER ASSOCIATES LLC I, <br>                   Nominal Defendant. | Index No. 006110/2009 |
| THE JORDAN GROUP LLC, derivatively on behalf of BEACON ASSOCIATES LLC I, <br>                   Plaintiff, <br>              v. <br><br> BEACON ASSOCIATES MANAGEMENT CORP. et. al., <br>                   Defendants, <br>              -and- <br><br> BEACON ASSOCIATES LLC I, <br>                   Nominal Defendant. | Index No. 003757/2011 |

CIRCUIT COURT OF THE STATE OF FLORIDA
FIFTEENTH JUDICIAL CIRCUIT, PALM BEACH COUNTY

HARVEY GLICKER, et. al.,
                              Plaintiffs,
                    v.                                    Court File No.
                                                          502010CA029643 XXXX MBAB
IVY ASSET MANAGEMENT CORP., et. al.,
                              Defendants,


**MEMORANDUM OF LAW IN OPPOSITION TO CLASS COUNSELS'
MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES**


ERIC T. SCHNEIDERMAN,
Attorney General of the State of New York

120 Broadway, 23rd Floor
New York, New York 10271
212.416-8208

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ...........................................................................................1

STATEMENT OF FACTS .................................................................................................2

    I. The Attorney General's Investigation of Ivy...............................................................2

    II. The Class Action ....................................................................................................5

    III. This Court's Denial of Ivy's Motion Dismiss in
       *In re J.P. Jeanneret Associates, Inc.* ...........................................................7

    IV. Class Counsels' Investigation of Ivy ......................................................................7

    VI. Mediation and Settlement .....................................................................................8

ARGUMENT ...................................................................................................................9

    I.   BECAUSE THE IVY DEFENDANTS OFFERED THE NYAG
        $140 MILLION TO SETTLE THE NYAG'S CLAIM ALONE,
        CLASS COUNSEL EFFORTS CONFERRED A BENEFIT ON
        THE CLASS OF AT MOST $79 MILLION ...............................................................9

    II.  THE *GOLDBERGER* FACTORS REQUIRE A FEE
        AWARD FAR BELOW THE $41 MILLION SOUGHT BY
        PLAINTIFFS COUNSEL............................................................................................11

        1.   The Size of the Fee Requested in Relationship to the Settlement Achieved …... 11

        2.   Litigation Risk ..…………………………………………………………...……. 11

        3.   Counsels' Time and Labor..…………………………………………………...…… 13

        4.   The Magnitude and Complexity of the Issues…………………………………… 16

        5.   Public Policy…………………..…………………………………………..…….... 16

        6.   The Quality of the Representation………..………………………………...…… 17

CONCLUSION...............................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

*Beane v. Bank of New York Mellon*, No. 07 Civ. 09444,
2009 WL 874046 (S.D.N.Y. March 31, 2009) .............................................................15

*Fears v. Wilhelmina Model Agency*, No. 02 CV 4911,
2009 WL 2958396 (S.D.N.Y. Sept. 16, 2009)........................................................13, 15

*Goldberger v. Integrated Res.,* 209 F. 3d 43, 50 (2d Cir. 2000)...................................11

*In re "Agent Orange" Prod. Liability Litig.,* 818 F.2d 226, 237 (2d Cir. 1987)..........13

*In re Bausch & Lomb, Inc. Sec. Litig.,* 183 F.R.D. 78, 87 (W.D.N.Y. 1998)................12

*In re Beacon Assocs. Litig.,* 745 F. Supp. 2d 386, 414-417 (S.D.N.Y. 2010) ............6, 7

*In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 375 (S.D.N.Y. 2005) ................................12

*In re First Databank Antitrust Litig.*, 209 F. Supp. 2d 96, 101 (D.D.C. 2002) ..............9

*In re J.P. Jeanneret Assocs. Inc.,* 769 F. Supp. 2d 340 (S.D.N.Y. 2011)........................7

*In re Painewebber Ltd. Partnerships Litig.*, 999 F. Supp. 719, 724-725 (S.D.N.Y.1998)............12

*In re Renaissancere Holdings Ltd. Sec. Litig.,* No. 05 Civ. 6764,
2008 WL 236684 (S.D.N.Y. Jan. 18, 2008) .............................................................12, 16

*Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y 2010) ...............6

*In re NTL Inc. Sec. Litig.*, 02 Civ. 3013, 2007 WL 1294377 (S. D. N.Y. March 1, 2007).............16

*Ramos v. Patrician Equities Corp.*, No. 89 Civ. 5370,
1993 U.S. Dist. LEXIS 2979 (S.D.N.Y. March 1, 1993) ................................................9

*Swedish Hospital Corp. v. Shalala*, 1 F. 3d 1261, 1272 (D.C. Cir. 1993)......................9

## PRELIMINARY STATEMENT

Over a year before the mediation that resulted in the $219 million settlement presently before the Court, defendant Ivy Asset Corporation, Inc. LLC ("Ivy") offered the New York Attorney General ("Attorney General" or "NYAG") $140 million to settle substantially identical claims. Accordingly, the efforts of private counsel ("Class Counsel") provided a benefit to their clients (the "Class") of no more than $79 million. Despite this fact, Class Counsel have applied for a fee of $41 million and expenses of $1 million, an amount that would consume 53% of the additional $79 million benefit they achieved. A fee of this magnitude would be wildly excessive.

Class Counsels' fee request is also excessive in that the 118,000 hours that Class Counsel claim to have devoted to the private actions that are being settled (the "Class Action") appear to reflect substantial non-efficiencies, waste and duplication. The Attorney General expended approximately 6,000 hours to conduct a year-long investigation of Ivy that uncovered every significant piece of evidence against Ivy found to date.

Even making allowance for the hours Class Counsel spent on activities the Attorney General was not required to do—opposing motions to dismiss, obtaining class certification, attending court conferences and producing documents to Ivy—118,000 hours is an astounding number to develop the same body of evidence that the Attorney General developed in 6,000 hours. The number is even more astounding in light of the fact that Class Counsel conducted their discovery with the aid of a 55-page complaint the Attorney General filed in New York State Supreme Court that set forth in minute detail the evidence adduced by the Attorney General in its investigation, and the documents and deposition testimony supporting the allegations.

The Attorney General opposes Class Counsels' fee application because the fee requested is unreasonable, contrary to law, and would give to Class Counsel money that properly should go to defrauded investors.

## STATEMENT OF FACTS

### I.  The Attorney General's Investigation of Ivy

The NYAG commenced an investigation of Ivy in April of 2009.  Over the next ten months, the NYAG examined 11 million documents produced by Ivy and Ivy clients, took 37 depositions, and researched numerous legal issues relevant to prosecuting a claim against Ivy. The documents found and testimony adduced demonstrated that Ivy had fraudulently misled clients about Madoff for more than a decade, and that among those misled were the managers of the Beacon Fund, the Andover Fund, and the Income Plus Fund (the "Managers"), who collectively invested over $227 million of client assets with Madoff.  (Declaration of Roger L. Waldman, Esq. in Opposition to Class Counsels' Fee Application ("Waldman Decl."), ¶ 3.)

In May of 2010, the Attorney General filed a 55-page complaint[1] (the "Complaint" or "NYAG Complaint") against Ivy and two of its former principals, Lawrence Simon and Howard Wohl, detailing the facts uncovered during its investigation.  The Complaint alleged, among other things, that Ivy knew, but failed to disclose to the Managers the following material facts:

1.  There were insufficient options available either on an exchange or over the counter to support the trading Madoff stated he was doing.  (NYAG Compl. ¶¶ 51–55.)

2.  The explanations Madoff gave Ivy about where he got the options he traded were false. (*Id.* ¶¶ 58–61.)

3.  The returns Madoff reported were false.  (*Id.* ¶ 62.)

---

[1] Ex. 1 to Waldman Decl.

4.  A Madoff insider acknowledged that Madoff was misappropriating for his own use funds clients entrusted to him to invest.  (*Id*. ¶¶ 62–64.)

5.  Wohl, one of Ivy's two principals, had recommended that Ivy withdraw its own small investment in Madoff because of the facts Ivy knew.  (*Id*. ¶ 75.)

6.  Ivy had decided not to withdraw its funds from Madoff as Wohl recommended to avoid disclosing its concern about Madoff to the Managers.  (*Id*. ¶¶ 76–80.)

7.  Ivy told other clients that it believed its obligations as a fiduciary prevented it from investing client funds entrusted to it in Madoff.  (*Id*. ¶ 114.)

8.  Ivy counseled other clients not to invest in Madoff.  (*Id*. ¶ 116.)

9.  Wohl, Ivy's co-principal and chief investment officer, considered it a real possibility that Madoff was a fraud.  (*Id*. ¶ 113.)

10.  It was rumored Madoff was operating a Ponzi scheme.  (*Id*. ¶¶ 50–51.)

11.  Ivy's Global Risk Management Committee listed Madoff as one of Ivy's ten top risks.  (*Id*. ¶ 122.)

In addition to alleging that Ivy knew but did not disclose these facts, the Complaint supported each allegation by identifying and quoting from internal Ivy e-mails and documents, and from deposition testimony.  (Waldman Decl. ¶¶ 4-6.)

The Complaint also identified numerous letters Ivy sent to the Managers and an oral statement that affirmatively misrepresented Ivy's views of Madoff.  These included:

- Several letters that falsely stated that Ivy's only concern with Madoff was the large amount of assets he had under management.  (NYAG Compl. ¶ 111.)

- Two letters that falsely stated that Ivy had "no reason to believe [that] there is anything improper in the Madoff operation."  (*Id*. ¶ 99.)

- A false statement in a 2000 meeting where Ivy falsely assured a Manager who asked about Madoff that Madoff was "essentially legitimate," a belief Ivy did not hold.  (*Id*. ¶ 102.)

(Waldman Decl. ¶¶ 7-8.)

Prior to the filing of the Complaint, the NYAG and Ivy engaged in several months of

settlement negotiations.  Toward the conclusion of the negotiations, Ivy indicated it would pay

an aggregate of $140 million to settle the NYAG's claims as part of a settlement that, among

other things, contemplated the global resolution and release of all claims by investors in the

beacon, Andover and Income Plus Funds, and Direct Investors, as well as all claims by the

Beacon, Andover and Income Plus Funds themselves, and judgment reduction with respect to

claims against managers of the Funds.  (Waldman Decl. ¶ 10.)

      The payment of $140 million would be made into a settlement fund of which 100%

would be distributed to investors who tendered claims and releases.  During the negotiations, the

NYAG disclosed to Ivy the evidence it had found and permitted Ivy's counsel to read a draft

complaint that was substantially the same as the complaint the NYAG later filed.  Ivy and its two

former principals then offered to pay $140 million to settle the NYAG's claim against them.

(Waldman Decl. ¶ 10.)

      The investors who Ivy and the NYAG contemplated would be tendering claims and

executing releases were the same Beacon Fund, Andover Fund, Income Plus and JPJ investors on

whose behalf Class Counsel have brought class actions.  It was anticipated that most class

members would opt to participate in the NYAG-Ivy settlement and receive the immediate

substantial payment it provided rather than continue as class members in uncertain class actions

which at that point did not look promising in that they alleged none of the important facts the

NYAG had found.  (Waldman Decl. ¶ 11.)

      The $140 million that Class Members would have received under the Ivy/NYAG

settlement is only $25 million less than the approximately $165 million Class Members will

receive from the present settlement if Class Counsels' fee application is approved.  While the

total settlement fund amount is $219 million, the amount that will be distributed to the Class will be that amount less fees, expenses, and payments totaling $54 million. (Waldman Decl. ¶ 12.)

The settlement negotiations between the NYAG and Ivy ended in early May of 2010, and the NYAG filed an action against Ivy and its two former principles on May 11, 2010. (Waldman Decl. ¶ 13.)

## II. The Class Action

Class Counsel filed a consolidated and amended complaint ("Beacon Class Complaint") in *In re Beacon Assoc. Litig.,* 09 Civ. 0777 on October 1, 2009.[2] The Beacon Class Complaint[3] did not allege any of the specific acts of wrongdoing that the NYAG later alleged in the Complaint. It alleged only that Ivy failed to conduct adequate due diligence and ignored a number of "red flags" that should have caused it to investigate further. (Beacon Class Compl. ¶ 147.) The Beacon Class Complaint thus told a fundamentally different story than the NYAG's Complaint. Whereas the Beacon Class Complaint alleged only that Ivy failed to uncover Madoff's fraud, the NYAG's Complaint alleged that Ivy *did* uncover Madoff's fraud and then fraudulently misled clients about Madoff.

Ivy and other defendants filed motions to dismiss the Beacon Class Complaint in December 2009 and the motions were fully briefed and *sub judice* by the time the NYAG filed its complaint on May 10, 2011. Had a decision been issued on the motions, it appears likely that the motions would have been granted. Judge Sand, to whom the motions were addressed, subsequently dismissed another class action in which plaintiffs alleged a defendant had failed to

---

[2] The various private federal actions participating in this settlement were consolidated for discovery into two cases: *In re Beacon Associates Litigation*, No. 09 Civ. 0777 (S.D.N.Y) (Sand, J.) and *In re J.P. Jeanneret Associates Inc.*, No. 09 Civ. 3907 (McMahon, J.).

[3] Ex. 3 to Waldman Decl.

5

recognize the same red flags. *See Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 311 (S.D.N.Y 2010). Further, in *Beacon* itself, Judge Sand later granted motions to dismiss defendants against whom Class Counsel asserted only red flag claims. *In re Beacon Assocs. Litig.*, 745 F. Supp. 2d 386, 414-17 (S.D.N.Y. 2010) (dismissing red flag claims against Beacon and auditors).

However, no decision was ever rendered by the Court on the 2009 motions. While the motions were *sub judice*, Class Counsel mooted the motions by filing an amended complaint ("Am. Compl.")[4] that wholly adopted the facts and theory of the NYAG's complaint. The Amended Complaint cited the NYAG's complaint 133 times and incorporated every fact alleged in it. (*Compare e.g.,* NYAG Compl. ¶ 9 *with* Am. Compl. ¶ 26; NYAG Compl. ¶ 52 *with* Am. Compl. ¶ 187; NYAG Compl. ¶ 55 *with* Am. Compl. ¶ 188; NYAG Compl. ¶ 57 *with* Am. Compl. ¶ 189; NYAG Compl. ¶ 58 *with* Am. Compl. ¶ 191; NYAG Compl. ¶ 60 *with* Am. Compl. ¶ 197.) It did not even bother to paraphrase the paragraph in the NYAG's complaint that summarized the material facts known by Ivy but not disclosed, instead copying the paragraph *in haec verba*. (*Compare* NYAG Compl. ¶ 81 *with* Am. Compl. ¶ 210.)

Thereafter, the defendants in the Class Action moved to dismiss the Amended Class Complaint. In its opinion denying the motions in part and granting them in part, Judge Sand denied Ivy's motion largely because of the new allegations the Amended Complaint had incorporated from the NYAG's Complaint. Judge Sand cited almost exclusively to the NYAG's Complaint in the fact section of his opinion, and specifically relied on the allegations made in the NYAG's Complaint in holding that the Amended Class Complaint adequately alleged Ivy

---

[4] The Second Amended Class Complaint was filed on June 21, 2010. Waldman Decl. Ex. 3.

scienter, 745 F. Supp. 2d at 406, and in sustaining 10(b) claims against the individual Ivy

defendants.  *Id.* at 411.

### III. This Court's Denial of Ivy's Motion to Dismiss in *In re J.P. Jeanneret Associates, Inc.*

Class counsel in *In re Beacon* were not the only ones who amended their class complaint

to incorporate the facts and evidence detailed in the NYAG's Complaint. Three days after the

NYAG filed its Complaint, counsel in *In re J.P. Jeanneret Assocs. Inc.*, 769 F. Supp. 2d 340

(S.D.N.Y. 2011), the class action before this Court, amended their class action complaint to

adopt the facts and evidence in the Complaint.  As in *Beacon,* Ivy and other defendants in

*Jeanneret* thereafter moved to dismiss the amended complaint.

This Court, like Judge Sand, denied Ivy's motion to dismiss because of the facts

uncovered by the NYAG and published in its Complaint.  Noting that Judge Sand had denied

motions to dismiss "virtually identical claims against the Ivy and Jeanneret Defendants," *In re

J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 346 (S.D.N.Y. 2011), the Court set forth a

chronology of facts with respect to Ivy that consisted virtually entirely of facts that the NYAG

had pled and that Class Counsel had copied into the amended complaint.  *Id.* at 350-352, 367-

368.  The Court then held that there was no issue as to whether the allegations, if proved were

sufficient to state a fraud claim, stating that "Judge Sand has already answered that question, and

I do not quarrel in the slightest with his conclusions."  *Id.* at 369.

### IV.  Class Counsels' Investigation of Ivy

Subsequent to Judge Sand's and Judge McMahon's denials of Ivy's motions to dismiss,

Class Counsel commenced document discovery.  In that discovery, Ivy and the other defendants

produced to Class Counsel the 11 million documents they had produced to the NYAG plus three million additional documents (many presumably duplicates of those produced to the NYAG) that they had produced to other regulators.  (Decl. of Barbara J. Hart in Supp. of Pls.' Mot. for Final Approval of the Sett. and Plan of Alloc., Certif. of Sett. Classes and Awards of Attys' Fees and Expenses at ¶ 48.)

Despite the fact that the NYAG had already reviewed at least 11 million of the 14 million documents produced and had identified in its Complaint the e-mails and other documents in the 11 million documents it had found that were relevant to prosecuting a claim against Ivy, Class Counsel reviewed the 11 million documents produced to the NYAG *de novo*.  Although most Class Counsel engaged in a joint review of documents, at least one firm for which Counsels' fees are being sought performed a separate and totally duplicative review of the documents. (Waldman Decl. ¶ 22.)

Class Counsels' document review does not appear to have uncovered a single significant document not found by the NYAG and identified in the NYAG's Complaint.  (*Id.* ¶ 23.)


## V.  Mediation and Settlement

Sometime in 2011, Lead Class Counsel and/or Beacon's counsel contacted the NYAG and asked it if the NYAG would participate in a mediation with Ivy to resolve the Class Action, the NYAG action, and a separate action that had been brought by the Department of Labor.  The NYAG agreed to do so, and thereafter submitted a mediation statement and participated actively in the three-day mediation as well as the time consuming ancillary negotiations that produced and documented the final settlement.  (Waldman Dec. ¶ 24.)

<u>**ARGUMENT**</u>

**I.     BECAUSE THE IVY DEFENDANTS OFFERED THE NYAG $140 MILLION
TO SETTLE THE NYAG'S CLAIM ALONE, CLASS COUNSELS' EFFORTS
CONFERRED A BENEFIT ON THE CLASS OF AT MOST $79 MILLION.**

The threshold question in determining the fee to which Class Counsel are entitled is how
much, if any, of the $219 million settlement was generated by Class Counsel.  Where a
settlement fund in a class action is generated in part by private class counsel and in part by
others, private class counsel are entitled to a fee only with respect to that portion of the
settlement fund attributable to their efforts and not the portion that is attributable to the efforts of
others.  *See Ramos v. Patrician Equities Corp.*, No. 89 Civ. 5370, 1993 U.S. Dist. LEXIS 2979
at *2, *26 (S.D.N.Y. Mar. 1, 1993) (adopting a special master's recommendation that class
counsel's fee be reduced because "much of the ultimate benefit of the settlement to the class
resulted from the efforts of others than Plaintiff Class Counsel.")

Directly on point is *In re First Databank Antitrust Litig.*, 209 F. Supp. 2d 96, 101
(D.D.C. 2002), where, as here, the defendant in the class action had made an offer to a
governmental agency to settle the agency's investigation many months before the class action
was settled.  In *Databank*, the defendant offered the FTC $16 million ten months before private
class action counsel settled the class action for $24 million.  When counsel applied for a fee
equal to a percentage of the entire $24 million class action settlement, the court denied the
application and held that class counsel was only entitled to a fee based on the $8 million by
which the class action settlement exceeded the $16 million the defendant had previously offered
the FTC.  *Id.* at 101.

Also on point is *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993), in
which the Third Circuit affirmed a lower court's decision rejecting an application for a fee equal

to a percentage of the entire amount of a settlement and instead awarded counsel a fee based on approximately 36% of the fund.  The Third Circuit held that it was reasonable to base private counsel's fee "only on that part of the fund for which [private class] counsel was responsible." *Id*.

The Ivy defendants offered the NYAG $140 million to settle the Attorney General's claims almost two years before settlement negotiations in the Class Action began.  The offer was made solely in response to facts uncovered by the Attorney General in a year-long investigation and owed nothing to the Class Action, which at the time alleged none of the important facts the Attorney General had discovered.  Given the $140 million offer Ivy made to the Attorney General in early 2010, Class Counsel can at most claim responsibility for $79 million of the $219 million settlement fund created to settle the pending actions.

Indeed, a strong argument can be made that Class Counsel are responsible for only the $9 million that is being contributed to the settlement fund by non-Ivy defendants John P. Jeanneret, Joel Danziger and Harris Markhoff, whom the Attorney General did not sue.  As noted, the facts upon which Ivy has settled the Class Action are facts that were uncovered by the NYAG, not Class Counsel:  Class Counsels' own discovery efforts did not yield a single significant fact or piece of evidence not mentioned in the NYAG's complaint.  That being so, Ivy's agreement to pay an additional $70 million to settle all claims owes little, if anything to Class Counsels' work prior to the mediation.  Apart from counsels' participation in the April 2012 mediation that resulted in the additional Ivy payment—a mediation in which the DOL and NYAG participated equally—it is difficult to identify any contribution Class Counsel made to creating the additional $70 million payment by Ivy.

Class Counsels' $41 million fee application is based on the false premise that Class
Counsel were solely responsible for creating a $219 million settlement fund.  In fact, Class
Counsel were responsible for creating at most $79 million of the fund.  That being so, both law
and logic dictate that any fee award to them must be based on their contribution to securing $79
million, not $219 million.  At 20%, that would calculate to less than $16 million.

II.   **THE *GOLDBERGER* FACTORS REQUIRE A FEE AWARD FAR BELOW
THE $41 MILLION SOUGHT BY PLAINTIFFS COUNSEL**

In *Goldberger v. Integrated Res.*, 209 F. 3d 43, 50 (2d Cir. 2000), the Second Circuit set
forth six factors to be considered in determining the reasonableness of a fee award request.
These are:  (1) the size of the requested fee in relationship to the settlement; (2) the risk of the
litigation; (3) counsel's time and labor; (4) the magnitude and complexity of the litigation;
(5) public policy considerations; and (6) the quality of the representation.  As will be seen,
although Class counsel assert that the *Goldberger* factors support their request for fees of $41
million, in fact the opposite is true.

1.   The Size of the Fee Requested in Relationship to the Settlement Achieved

The relationship of the fee requested to the settlement Class Counsel achieved mandates
rejection of Class Counsels' fee application.  As noted above, Class Counsel can claim credit for
at most $79 million of the $219 million dollar settlement for which they seek a fee award.  A $41
million fee would be a totally disproportionate 53% of that $79 million.

2.   Litigation Risk

Once the Attorney General had filed his Complaint, there was negligible litigation risk in
pursuing the Class Action.  The courts have long recognized that the mere existence of a parallel
government investigation puts pressure on a defendant to settle and gives a plaintiff's counsel

11

greater reason to believe that he will prevail.  *See In re Bausch & Lomb, Inc. Sec. Litig.*, 183

F.R.D. 78, 87 (W.D.N.Y. 1998) ("the existence of the SEC's investigation would certainly have

put additional pressure on B&L to settle the case and would also have given plaintiffs counsel

greater reason to believe that they could prevail."); *In re Elan Sec. Litig.*, 385 F. Supp. 2d 363,

375 (S.D.N.Y. 2005); *In re Painewebber Ltd. Partnerships Litig.,* 999 F. Supp. 719, 724-25

(S.D.N.Y. 1998).  In this case, there were two parallel investigations going forward, the

NYAG's, and DOL's.

      But Class Counsel had the benefit of much more than the reduced risk inherent in the

existence of a parallel government investigation.  Here, Class Counsel had the benefit of the

overwhelming evidence of Ivy misconduct and fraud uncovered in the NYAG's investigation

and publicly disclosed in the NYAG's Complaint.  Once Class Counsel knew what the NYAG

had uncovered, they faced minimal litigation risk.

      Courts have found reduced litigation risk and reduced counsel fees in situations strikingly

similar to the situation presented here.  In *In re Renaissancere Holdings Ltd. Sec. Litig.*, No. 05

Civ. 6764, 2008 WL 236684 at *1, (S.D.N.Y. Jan. 18, 2008), the class action for which class

counsel was seeking attorneys fees had been commenced prior to the institution of a parallel

action by the SEC, and class counsel had filed an amended complaint that incorporated the

allegations from the SEC complaint.  Holding that the SEC action reduced class counsels'

litigation risk, the Court reduced class counsels' fee from 25% of the amount of the class action

settlement to 10%.  The court did the same in *In re Bausch & Lomb*, 183 F.R.D. at 87, where the

class action for which counsel sought fees was filed seven months before the SEC had even

initiated an investigation.  Again, the Court found that the governmental activity had reduced

class counsels' litigation risk, and reduced counsels' fees from 30% of the class action settlement to 10.5 %.

3.  <u>Counsels' Time and Labor</u>

Class Counsel claim that they collectively devoted 118,000 hours of legal time to the litigation, yielding a lodestar of $48 million.  From this fact they argue that *Goldberger's* citation of counsel's time and labor as a factor in determining the reasonableness of a fee supports their fee application for $41 million.  Mem. of Law in Supp. of Private Pls.' Mot. for Final Approval of the Sett. and Plan of Alloc., Certif. of Sett. Classes and Awards of Attys' Fees and Expenses at 21, *In re Beacon Assoc. Litig.,* 09 Civ. 0777 ("Pl. Mem.").

Counsel misreads *Goldberger*.  Not all hours expended by counsel are to be compensated, but only hours of work that benefit the class.  *See In re "Agent Orange" Prod. Liab. Litig.,* 818 F.2d 226, 237 (2d Cir. 1987) ("The critical inquiry when reviewing hours billed to the common fund in a class action is whether the work performed resulted in a benefit to the class."); *Fears v. Wilhelmina Model Agency*, No. 02 CV 4911, 2009 WL 2958396 at *6 (S.D.N.Y. Sept. 16, 2009) ("Counsel, however are entitled to compensation only for work that benefited the class.").  To the extent any of Class Counsels' hours did not provide a benefit to the Class, Counsel is not entitled to a fee for them.

As noted above, it is difficult to see how most of the 118,000 hours Counsel expended in the Class Action benefited the Class.  The NYAG had a separate action pending against Ivy that alleged and documented every significant fact embraced in the Class Action.  Additionally, DOL had a separate action pending against Ivy.  Both actions—particularly the NYAG action, which required proof of neither scienter nor reliance to succeed—were stronger and more of a threat to Ivy than the Class Action.

13

The only hours spent by Class Counsel that resulted in an identifiable benefit to the class were:  (a) the hours Class Counsel spent in preparing for and participating in the three-day mediation with Ivy that increased Ivy's settlement payment from the $140 million Ivy had previously offered to the NYAG and added a $9 million payment from the non-Ivy defendants, and (b) the hours spent drafting and negotiating the Stipulation of Settlement and the other documents currently before the Court.  Class Counsel exhibited considerable tenacity in the mediation, and were a substantial, although not exclusive, factor in generating an increased offer from Ivy.  While we dispute Lead Counsel's assertion that Lead Counsel led the mediation negotiations, Hart Decl. ¶ 21,  (DOL and the NYAG were as active and prominent in the mediation as Lead Counsel or any other Class Counsel), the hours spent by Class Counsel in the mediation and thereafter undoubtedly benefited the class and should be compensated.

The situation is different with the other work performed by Class Counsel. Beyond the fact that, as noted above the Class claims added nothing to the NYAG and DOL claims, the hours Class Counsel expended in the Class Action appear to have been excessive.  It took the NYAG less than 6,000 hours of legal, paralegal, and intern time to:  (a) conduct an investigation that uncovered every significant fact regarding Ivy that Class Counsel later asserted in the Class Action, (b) to draft a complaint that detailed the evidence against Ivy that Class Counsel copied, and (c) to negotiate a $140 million offer of settlement from Ivy on the basis of the facts the NYAG's investigation had uncovered.  By contrast, it took Class Counsel 118,000 hours to develop the same case, notwithstanding the fact that Class Counsel started its investigation already knowing the facts and evidence the Attorney General had found from reading the Attorney General's Complaint, the transcripts of the 37 depositions the Attorney General took, and the exhibits introduced at the depositions.

Some of Class Counsels' time—the time involved in opposing several motions to dismiss, producing documents to Ivy and the other defendants, obtaining certification of the class, and attending conferences before Magistrate Judge Peck, Hart Decl. ¶ 35—was work the Attorney General did not have to do.  The amount of time expended in these tasks is not broken out in Class Counsels' papers, so we do not know how much of Class Counsels' time was expended in activities the Attorney General did not undertake, but it is difficult to understand how those tasks could take 112,000 hours if they were performed efficiently.

Without more detail than Class Counsel has provided in their papers, it is impossible to determine whether or how much duplication, inefficiency or waste Counsels' work involved. However, certain facts are disquieting. These include:  (a) that Counsel identified a staggering 110 lawyers and over 67 staff and paralegals as involved in the litigation, compared to the three lawyers and support staff who were involved in the NYAG's investigation and suit, (b) that the document discovery Counsel conducted does not appear to have taken advantage of and utilized the roadmap provided by the NYAG's Complaint and the NYAG's depositions and deposition exhibits, (c) that one of the firms seeking a fee conducted a totally duplicative review of documents reviewed by the other firms, and (d) the sheer number of hours Class Counsel assert they expended measured against the tasks Class Counsel say they performed.

Apparent inefficiency and waste aside, the fact that a $41 million award would represent 51% of the $79 million benefit for the Class Counsel achieved precludes giving weight to Class Counsels' hours.  Where, as here, a class action counsels' lodestar approaches or exceeds 50% of the benefit obtained for a class, courts apply a large negative multiplier to counsels' lodestar to reduce the amount of fee awarded.  *See Beane v. Bank of New York Mellon*, No. 07 Civ. 09444, 2009 WL 874046, at *8 (S.D.N.Y. Mar. 31, 2009); *Fears*, 2009 WL 2958396 at *6.

4.  The Magnitude and Complexity of the Issues

While courts sometimes award fees larger than otherwise would be awarded in cases that involve unusually complex facts or novel legal issues, the Class Action involves no such issues. The issues of materiality, scienter, reliance, loss causation, damages and class certification that Class Counsel cite, Pl. Mem. at 22, are typically present in class actions.  They are not the kind of issues for which an enhanced fee is awarded.

Beyond this, the NYAG uncovered abundant evidence relating to materiality, scienter, and reliance in its investigation and presented the evidence to Class Counsel in the Complaint it filed and the depositions and exhibits available to Class Counsel.  To the extent there was any complexity involved in these issues, the NYAG's evidence resolved much if not all of the complexity.  Plaintiffs are entitled to no enhancement of fee by reason of complexity of the issues.

5.  Public Policy

Two public policy considerations are involved in determining class action fee awards. The first is the importance of assuring that the fee awards in Class Actions are reasonable.  The second is to insure that the fees awarded do not provide a windfall to attorneys to the detriment of the plaintiff class.  *See Renaissancere,* 2008 WL 236684 at *5 (While public policy favors "the award of reasonable attorney's fees," courts must also "guard against providing a monetary windfall to class counsel to the detriment of the plaintiff class"); *In re NTL Inc. Sec. Litig.*, 02 Civ. 3013, 2007 WL 1294377 (S.D. N.Y. March 1, 2007) (same).

Public policy does not militate in favor of awarding Class Counsel the $41 million fee requested.  A fee of that size is hardly necessary to induce lawyers to take on representations in cases where a fraud as blatant and as large as the Madoff Ponzi scheme have been exposed.  In

such cases, lawyers know from the outset that recovery is likely and will be substantial.  They

also know that they will almost surely be assisted by the government investigations and

prosecutions that invariably occur in the wake of a large and notorious fraud.  In a case like this,

where a governmental agency handed Class Counsel all the facts they needed to obtain a

settlement, a fee of $41 million would be against public policy.

6.  Quality of the Representation

We do not question that Class Counsel, who are experienced and able lawyers, gave the

Class quality representation.  However, the fact that the Class received high quality

representation does not justify a $41 million fee award in the circumstances of this case.

**CONCLUSION**

Class Counsels' fee application for $41 million should be denied.  Any fees awarded

should be substantially reduced.

Dated:          New York, New York
                February 8, 2013

                                        Respectfully submitted,


                                        ERIC T. SCHNEIDERMAN,
                                        Attorney General of the State of New York

                                        By:    s/Roger L. Waldman

                                        Roger L. Waldman
                                        Senior Counsel, Investor Protection Bureau
                                        Office of the New York State Attorney General
                                        120 Broadway, 23rd Floor
                                        New York, New York 10271
                                        212.416-8208

17